Wm. H. Stephens, Special Judge,
delivered the opinion of the Court.
Boswell B. DeG-raffenreid, of Payette county, who was possessed of a large real and personal estate, made his Will on the 3d of April, 1846, to which he added a codicil on the 14th of September, 1855, and soon after-wards, died.
By this Will, after making provision for certain of his children, he vested the residue of his slaves, and of his home place, in Henry E. DeGraffenreid, E. S. Evans, Blount Springfield, Levin H. Coe, and Peter Bland, in trust for the support and maintenance of his two daughters, Sarah B. and Agnes, and his grandson, Josiah Evans; the annual profits to be applied to that purpose, one-third to each, the slaves to be kept to. *111 gether and worked together by the trustees upon said land. Upon the marriage, or coming of age of either of said daughters, the trustees were to lay off to her in severalty, her share of the land and negroes, and were to hold the same for the support, from year to year, of such daughters and their children, .free from the debts, contracts, or disposal of the husband. Upon the decease of either of the three devisees and legatees, without issue living at his or her death, his or her slaves to go to the surviving children or grand-children of the testator. In a subsequent part of the Will, appears this clause :
“Furthermore, I expect the trustees of each of my daughters, upon marriage of each daughter, to allow her to have in her actual possession, the slaves and land willed to their use, so long as they see the property prudently managed, and proceeds thereof applied regularly to her and her children’s support.”
The trustees aforesaid, were also nominated executors of the Will, of whom Henry E. DeGraffenreid, the son of the testator, alone qualified.
By a proceeding in the County Court, of Fayette county, in the year 1856, the negroes were divided amongst the legatees, and some fifteen or twenty were allotted to Sarah B., who had in the life-time of her father, intermarried with Solomon Green. But no partition of the land has yet been made, and it remains in common. The slaves acquired by Sarah B. Green, un der the division, went into her possession, upon a farm in Haywood, county which her father, by deed of gift, had conveyed to certain other trustees, for her separate *112 use. The original bill in this cause was filed mainly with a view to set up and enforce an imperfect compromise made amongst the children of the testator, after his death, and to get the instructions of the Court as to the proper mode of settling the estate, and of accounting for the trust-funds which had accumulated.
Pending the proceedings, the defendant, Green, and wife, with their children, removed to Memphis, carrying-said slaves with them. By a supplemental bill, the complainant charged that the health of the negroes would be endangered, and their value depreciated at Memphis, and the interests of the children of Mrs. Green, and of the remaindermen were jeoparded in consequence of the removal of the negroes to Memphis. He charged, also, that Solomon Green was insolvent, and of wasteful habits, and was using the proceeds of the labor or hire of the slaves, in payment of his individual debts.
The negroes were attached on the filing of that bill, and were delivered to the complainant.
The compromise sought to be set up was not binding upon said Sarah B. Green, and is abandoned by the complainant. Indeed, it was wholly inconsistent with his duty as trustee for the wife and children, to seek an appropriation of the trust estate to himself. He is also liable, perhaps, to the imputation of having been- somewhat harsh toward his sister in the progress of these proceedings. But the decision of this case must turn upon other questions.
It is, however, deemed necessary to discuss only two, viz:
1st. What are the , duties of the trustees under the Will in reference to the slaves ?
*113 2d. Do the facts make out a case for the interposition of a Court of Chancery?
The controlling, and prominent and oft-repeated intention of the testator seems to have been, to protect the estate of his daughters from the debts or control of their husbands ; to insure the application of its proceeds to the support of them and their children, from year to year, and to keep their slaves, as far as it was practicable, upon this home place, under the immediate control of the trustees. And although he directs them in certain con_ tingences, to permit his daughters upon marriage, to take the negroes into possession, he manifestly does not contemplate their removal from the neighborhood, for the
trustees, as a condition of giving their consent are to see that the property is prudently managed, and the proceeds applied regularly to the support of the women and their children.
This being the intention of the Will, it only remains to inquire, whether the removal of the slaves to Memphis, and the misappropriation of their hires by the husband, furnish a sufficient occasion for the intervention of the Court, and we think they do. Taking all the evidence together, we are satisfied that the health of the slaves is endangered, their morals exposed to debauchery, their opportunities for escape to free States, made more easy, and the probability of a misapplication of the proceeds of their labor, increased, by their removal to Memphis ; and, although, for the time being, the increase from their labor or hires is greater, their future and permanent value to the children, is impaired. Moreover, at Memphis, the trustee cannot see to the regular application of their proceeds to the objects contemplated in the *114 Will, and consequently, the husband is proved to have already applied a portion to his own private debts. We think, therefore, that for the present, at least, the trustee should have control of the slaves, and keep them employed upon the farm. He will be required to make, forthwith, a report to the Chancery Court, of all his proceedings, touching the trust estate, and to settle his accounts thus far; and to make report from time to time, of his trusteeship, and shall be subject to the orders of said Court. Proper decrees may there be made, from time to time, for the preservation of the slaves from exposure, in the hands of the trustee, and for changing their location, upon a case being made out. Mrs. G-reen shall be allowed a liberal support for herself and family, and the surplus funds now on hand, or hereafter to] accrue, may, after such liberal support, be invested by the Chancellor, in other property, for the benefit of the trust estate.
The decree of the Chancellor is reversed, and the cause remanded for another order upon the application of either party. Nothing in the decree, here, is to bar the right of defendants to apply for a removal of the trustee, if they can make out a proper case.